# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

No. 20-mj-03513-Louis

UNITED STATES OF AMERICA

vs.

JOSE MIGUEL FERNANDEZ and
ANTHONY LUIS GALARZA
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)?  ___Yes _X_ No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? ___Yes _X_ No

3. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)? ___Yes _X_ No

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

*/s/ Christine Hernandez*

BY: CHRISTINE HERNANDEZ
Assistant United States Attorney
Florida Bar No: 15349
U.S. Attorney's Office
11200 NW 20th Street, Suite 101
Miami, Florida 33172
Tel: (305) 715-7641 / 7655
Fax: (305) 715-7639
christine.hernandez@usdoj.gov

original

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
|---|---|
| v. | ) |
|  | ) Case No. 20-mj-03513-Louis |
| Jose Miguel Fernandez and | ) |
| Anthony Luis Galarza | ) |
|  | ) |

*Defendant(s)*

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **September 1, 2020** in the county of **Miami-Dade** in the **Southern** District of **Florida**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 841(a)(1) and 846. | As to all defendants: Did knowingly and willfully combine, conspire, confederate and agree with each other to possess with intent to distribute five (5) kilograms or more of a mixture and substance containing Cocaine Hydrochloride. |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

*Complainant's signature*

Irving M. Monteverde, HSI Special Agent
*Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by

Date: September 2, 2020

*Judge's signature*

City and state: Miami, Florida     Lauren F. Louis, United States Magistrate Judge
*Printed name and title*

I, Irving M. Monteverde, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the U.S. Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"), and have been so employed since August 2008. I am currently assigned to the Office of the Resident Agent in Charge, Key Largo, Florida. As an HSI Special Agent, I am empowered by law to conduct investigations of federal narcotics trafficking offenses and other federal crimes. I have been trained on the subject of narcotics trafficking and have been personally involved in investigations concerning narcotics trafficking, human smuggling, violent crimes, and organized criminal enterprises. I have received specialized training in narcotics investigations and identification as well as, the laws pertaining to search and seizure.

2. The statements contained in this affidavit are based upon my own personal knowledge, as well as information provided to me by other law enforcement officials. I have not included in this affidavit each and every fact known to me, but only the facts sufficient to establish probable cause to believe that and JOSE MIGUEL FERNANDEZ and ANTHONY LUIS GALARZA are in violation of Title 21, United States Code, Section 841(a)(1) and 846 that is, did knowingly and willfully combine, conspire, confederate and agree with each other to possess with intent to distribute five (5) kilograms or more of a mixture and substance containing Cocaine Hydrochloride.

3. On or about August 3, 2020, a law enforcement Source of Information ("SOI") contacted an Under-Cover Agent ("UCA") regarding an unknown individual ("Target #1") who stated he was a broker of narcotics in Ecuador. Target #1 told the UCA that he had a buyer in the United States who wanted to purchase cocaine.

4. On August 7, 2020, the UCA was contacted by an unknown individual utilizing telephone number (917) 280-1130. The unknown individual was later identified as JOSE MIGUEL FERNANDEZ ("FERNANDEZ"). FERNANDEZ told the UCA that his name was "Jose" and he was calling the UCA in reference to the purchase of cocaine. FERNANDEZ told the UCA he was

calling from New York and would be driving to Miami, Florida to meet with the UCA. FERNANDEZ told the UCA he wanted to purchase 30 kilograms of cocaine. The UCA told FERNANDEZ that the price was $30,000 United States currency per kilogram of cocaine.

5. On August 9, 2020, the UCA spoke with FERNANDEZ via telephone number (917) 280-1130 and requested FERNANDEZ to send a picture of the money with a date and time stamp on it to show the money was in FERNANDEZ's possession. In exchange, the UCA agreed to send FERNANDEZ a photograph of the cocaine with a date and time stamp as well. Shortly thereafter, FERNANDEZ sent the UCA, via text message, a photograph showing the proof of funds for the narcotics transaction. The UCA then sent FERNANDEZ a photograph of 30 kilograms of cocaine with proof of date and time.

6. During a conversation on August 22, 2020, FERNANDEZ told the UCA that he was ready and waiting to drive down to Miami to complete the purchase of the cocaine deal.

7. On or about August 28, 2020, FERNANDEZ contacted the UCA and stated that he was interested in purchasing an additional four (4) kilograms of cocaine. FERNANDEZ asked the UCA if he was willing to lower the price of each kilogram of cocaine since he was purchasing additional quantities. The UCA agree to re-negotiate the price to $28,000 USD per kilogram of cocaine.

8. On August 30, 2020, during a telephone conversation, FERNANDEZ told the UCA that he was starting to drive to Miami, Florida, in order to conduct the narcotics transaction. On August 31, 2020, FERNANDEZ contacted the UCA and told him he was in Miami, Florida. During this conversation, FERNANDEZ told the UCA that he wanted an additional five (5) kilograms of cocaine. The UCA told FERNANDEZ he wanted to first complete the 34-kilogram deal before the UCA agreed to bring an additional five (5) kilograms.

9. On September 1, 2020, at approximately 12:00 p.m., the UCA contacted FERNANDEZ and requested a time-frame of when FERNANDEZ was going to be ready to conduct the drug transaction. FERNANDEZ stated he was ready and asked for a meeting location. The UCA and FERNANDEZ agreed to meet at a bakery located at 8695 NW 87th Avenue in Miami, Florida.

10. At approximately 12:30 p.m., FERNANDEZ arrived at the pre-determined location and advised the UCA via text message that he was at the location. The UCA arrived at the location to meet with FERNANDEZ who was accompanied by an individual later identified as ANTHONY LUIS GALARZA ("GALARZA"). As FERNANDEZ and the UCA conversed about the details of the narcotics transaction, GALARZA joined the conversation. GALARZA proceeded to ask the UCA, "if everything was ok?" GALARZA then showed the UCA the duffle bags that contained the US currency for the drug transaction.

11. GALARZA told the UCA to look at the money to make sure it was all there before moving to the next location to finalize the narcotics deal. The UCA acknowledged that the funds were there and then told FERNANDEZ and GALARZA to follow the UCA vehicle to where the cocaine was located. FERNANDEZ and GALARZA then proceeded to follow the UCA's vehicle to the location where the UCA told them the cocaine was stored.

12. Once FERNANDEZ and GALARZA arrived at the location where the cocaine was located, they were instructed to enter the garage door behind the UCA's vehicle. FERNANDEZ and GALARZA exited their vehicle each carrying the duffle bags of money that were previously showed to the UCA. FERNANDEZ and GALARZA followed the UCA to an office inside the warehouse. In the office, the UCA showed GALARZA and FERNANDEZ two (2) kilograms of cocaine. GALARZA and FERNANDEZ each grabbed one kilogram of cocaine and made an

incision into the package in order to test the authenticity of the cocaine. GALARZA appeared to sniff and taste the brick of cocaine while FERNANDEZ manipulated the package and tested the cocaine by inserting three fingers in his mouth. After GALARZA and FERNANDEZ tested the cocaine, they both followed the UCA back into the garage where the other 32 kilograms of cocaine were located. At that time, law enforcement officers detained FERNANDEZ and GALARZA.

13. Based on the foregoing facts, your affiant submits that probable cause exists to believe JOSE MIGUEL FERNANDEZ and ANTHONY LUIS GALARZA did knowingly and willfully combine, conspire, confederate and agree with each other to possess with intent to distribute five (5) kilograms or more of a mixture and substance containing Cocaine Hydrochloride in violation of Title 21, United States Code, Section 841(a)(1) and 846.

**FURTHER AFFIANT SAYETH NAUGHT**

Irving M. Monteverde, Special Agent
Homeland Security Investigations

Attested to by the applicant in accordance with
the requirements of Fed.R.Crim.P. 4.1 by Face Time
this __2__ day of September 2020.

LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE